UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CHARLES ROBERT,

                Plaintiff

   -against-

DEPARTMENT OF JUSTICE, and
SOCIAL SECURITY ADMINISTRATION,

                Defendants.
-------------------------------------------------------------------X

<u>MEMORANDUM & ORDER</u>

05-CV-2543 (NGG) (ETB)

GARAUFIS, District Judge.

By Order dated June 18, 2007, I directed Plaintiff Charles Robert ("Plaintiff" or "Robert") to show cause in writing within twenty (20) days why I should not impose a $1,000 sanction against him for filing three submissions that I found to be frivolous submissions in contravention of this court's previous directives. Currently before the court is Plaintiff's response, which itself is a glaringly frivolous and unresponsive, fifty-two page submission that continues to ignore my mandates, the Federal Rules, the rules of the Eastern District of New York, and my individual rules. For the reasons that follow, I reject Plaintiff's response and impose sanctions in the amount of $1,000. Plaintiff is directed to make payment to the Clerk of Court by money order or cash within ten (10) days of this Memorandum and Order. The Clerk of Court is directed to return **without filing** any and all documents plaintiff may submit (except for a notice of appeal) unless and until he complies with this Order.

**I.    Background**

By order dated December 9, 2005, I prohibited plaintiff from filing any further Freedom

1

of Information Act ("FOIA") complaints without prior leave from this court. See Robert v. DOJ and SSA, No. 05-CV-2543, *slip op.* at 29 (E.D.N.Y. Dec. 9, 2005) (docket entry #16) ("December 9, 2005 M&O"). The court's order was based on Plaintiff's intentional "disregard of the liberal pleading guidelines set forth by the Federal Rules, his failure to prosecute his FOIA actions after commencing them, and his willful disobedience of this court's clear and unambiguous instructions." Id. at 26; see also Snowflake 5391 v. The National Archives et al., CV-98-3598 (LDW)(VVP) (complaint stricken for failure to comply with Fed. R. Civ. P. 8); Robert IV v. Department of Justice, No. CV-02-1101 (same); Robert VII a/k/a Snowflake 5391 v. DOJ, CV-04-1961 (NGG) (ETB) (same); Robert v. Bell et al., CV-89-3482 (JM) (Robert failed to oppose dispositive motion); Robert v. Doe et al., CV-89-4039 (LDW) (same); Robert v. Diefenderfer III, CV-90-3403 (LDW) (same); Ratisher-Cricchio Counsel v. HHS, CV-96-6275 (JG)(MDG) (same); Robert III v. DOJ, CV-01-4198 (JM) (same); Robert v. Doe et al., CV-89-4039 (Robert withdrew frivolous action); Robert v. Central Intelligence Agency, CV-00-4325 (JS)(ARL) (action dismissed because Robert never made the alleged FOIA request).

In my December 9, 2005 M&O, I struck the complaint and instructed Robert to file an amended complaint by January 9, 2006, cautioning him that "if this amended complaint is found not to comply with Fed. R. Civ. P. 8(a), or if it includes new claims or claims that have in the past been dismissed, that I shall dismiss the complaint with prejudice and consider the imposition of sanctions." (December 9, 2005 M&O at 28.) Since the time that I enjoined Robert from filing new actions without my prior authorization, he made a number of additional frivolous motions, as follows:

(1) Robert filed a letter to this court on December 14, 2005 seeking to add additional

2

claims to the instant action. (Robert Letter to the Court, Dec. 14, 2005.) I denied that request, reiterating my instructions given to him in my December 9, 2005 M&O, and warning that should he "violate any of these instructions, I shall dismiss the action and consider the imposition of sanctions." (M&O dated Dec. 16, 2005 at 2, docket entry #19.)

(2) Robert filed an affidavit entitled "Application to File New FOIA Complaint" on December 8, 2005 (docket entry #17), which was 128 pages and 565 paragraphs long, was incorrectly captioned, and did not include a notice of motion or a memorandum of law. (See M&O, Dec. 27, 2005, docket entry #20.) I denied Robert's motion, finding that this affidavit violated the local rules of this district and my individual rules. (Id. at 2.) I again repeated my instructions to him to follow the Federal Rules of Civil Procedure, the rules of this district, and my individual rules, and warned Robert that "if he violates the instructions that I have set forth herein, I shall consider the imposition of sanctions." (Id.)

In a June 18, 2007 Memorandum and Order ("6/18/07 M&O"), I considered a January 20, 2006 motion for leave to file a new complaint and motions dated April 6, 2006 and December 4, 2006 for leave to add causes of action to that complaint. In that M&O, I found Plaintiff's January 20, 2006, April 26, 2006, and December 4, 2006 motions for leave to file and amend a new complaint to be frivolous submissions in contravention of my previous directives. I directed Plaintiff to show cause in writing within twenty (20) days of the 6/18/07 M&O why the Court should not impose a $1,000 sanction against him for filing those submissions.

**II.      Discussion**

By brief filed on July 6, 2007, I received Plaintiff's response. (Affidavit in Compliance with Judge Garaufis['] June 18, 2007 Memorandum and Order ("Pl. Response").) This response

3

was fifty-two pages long, consisting of 162 largely irrelevant and argumentative numbered paragraphs. After reviewing certain documents Roberts is seeking, Plaintiff delves into a lengthy discussion of a recent release of documents called the "Family Jewels" by the Central Intelligence Agency. (Id. ¶¶ 6-10.) Plaintiff then requests that I recuse myself if I "had an *ex parte* communications with any Executive Branch officials or attorneys" in prior cases involving himself and, if I fail to recuse myself, he requests a hearing to consider my earlier rulings enjoining him from filing new FOIA actions without the court's authorization. (Id. ¶¶ 13-26.) Plaintiff continues with a nineteen-paragraph long discussion of his Amended Complaint (id. ¶¶ 27-45), a document which I accepted as timely filed in my 6/18/07 M&O and for which Plaintiff was not required to show cause with regard to sanctions. Then, Plaintiff spends the next fifty-one paragraphs discussing his January 20, 2006 "motion for leave to file a putative FOIA complaint." (Id. ¶¶ 46-96.) In this section, "plaintiff explains the relevance of these documents and how these documents are connect-the-dots related documents to the 10 documents being sought in the Robert v. DOJ and SSA amended complaint that Judge Garaufis pre-approved." (Id. ¶¶ 47.) This section, as with many of plaintiff's previous filings, is prolix, confusing, argumentative and often consists of immaterial details. For example:

* "When Judge Wexler scheduled the January 12, 1988 Robert v. Holz Chambers trial, Judge Wexler knew all of the almost incredible allegations that Robert had made and knew that Robert had filed a formal complaint with DAG Arnold Burns that EDNY DOJ attorneys had been withholding material information from Judge Wexler not only in Robert v. Holz, but also in the Ruppert litigation which has been transferred from Judge Altimari to Judge Wexler." (id. ¶¶ 13-26);

* "One of the chapters in the plaintiff's book, of which a rough draft of the 'Jackson nonacquiescence policy' and a 'Ruppert nonacquiescence policy' chapters of the text were forwarded to U.S. Attorney Mauskopf, the 2002-2007 lead counsel in Ford, explains how the 535 Members of Congress who have Ford v Shalala

certified nationwide class constituents will not be able to locate the 'nonacquiesence' standards programmed into the 2007 SSA computer to reduce millions of legally defenseless Ford class members monthly benefits, because the 'nonacquiescence' standards are not indexed on www.SSA.gov . . ." (id. ¶ 71);

* "If CIA Director General Hayden releases 1980s CIA 'family jewel' documents which reveal that the medical treatment for wounded Contras was provided at the CIA-DOD 'black operation' that was conducted at IMC, and was paid for after July, 1985 with unaudited HHS funds and not NHAO State Department funds, then this raises the disturbing factual issue of false information being provided to President Reagan's White House Counsels Fred Fielding (1981-1985), Peter Wallison (1986-1987), and Arthur Culvahouse (1987-1989)." (id. ¶ 91);

Then, Plaintiff spends the final twenty-two pages of his affidavit discussing his April 6, 2006 motion seeking leave to amend his January 20, 2006 motion. That section is similarly prolix, confusing, unresponsive and argumentative. For example, Plaintiff writes:

* "The plaintiff cites to CIA Director General Hayden's release of pre-1980s CIA 'family jewels' documents revealing that there were pre-1980s illegal domestic surveillance of U.S. citizens, because the public knows from DAG Comey's May 15, 2007 Senate Judiciary Committee testimony that AG Ashcroft and DAG Comey had reviewed the pre-March 10, 2004 NSA warrantless domestic surveillance program, and concluded that it was illegal." (id. ¶ 101);

* "On March 1, 2004, when OIPR Counsel Baker read the documents upon which AG Meese and FBI Director Judge Webster had certified that there was evidence that Robert was a terrorist or an agency of a foreign power, OIPR Counsel Baker knew whether the documents he would withhold pursuant to FOIA Exemption 1 and the 'Glomar Response' defenses, revealed that there had been illegal NSA warrantless surveillance of Robert prior to AG Meese filing his FISC certifications seeking the FISC authorized surveillance warrants." (id. ¶ 107);

* "Upon information and belief, the DOJ 'sealed Robert v. Holz documents will reveal to CIA Director General Hayden that Executive Branch attorneys, including CIA Assistant General Counsel Addington, had known that a rogue domestic CIA-DOD 'plumber' until had been created to use information from a NSA warrantless surveillance to prevent any 'leaks' of the 'sources and methods' that HHS General Counsel del Real, a rogue domestic CIA-DOD covert agent, was using when conducting the 'black operation' at IMC to provide medical care to the Contras and pay for the medical care with unaudited HHS funds." (id. ¶ 118);

5

> \*      "Upon information and belief, the logical questions that Senators may have asked the Nominee [Acting CIA General Counsel John Rizzo] would be what did 1981-1984 CIA Assistant Counsel David Addington know and when did he know it about the 'black operation' at IMC?, and a follow up question whether he knew if Mr. Addington knew whether a CIA-DOD 'plumber' unit was used to prevent 'leaks' of the existence of this 'black operation' and the 'sources and methods' of the CIA and DOD that included the use of NSA warrantless domestic surveillance? [A]nd a Senator may have asked the Nominee whether he knew if CAI Assistant General Counsel Addington had from 1982-1984 withheld information from President Reagan's White House Counsel Fred Fielding regarding the rogue domestic 'black operation' that was conducted at the Florida HMO IMC?" (id. ¶ 125);

Plaintiff further argues that this court should consider that the U.S. Attorney's Office has never filed a motion for sanctions pursuant to Fed. R. Civ. P. 11. (Id. ¶ 142.) As he writes, argumentatively: "The plaintiff submits that no U.S. Attorney has ever filed a FRCP 11 Motion against Robert, a/k/a Snowflake 5391 to the DOJ, because all of the U.S. Attorneys have known upon reading the FOIA requested documents and consulting with their 'command and control' officers, that the plaintiff's almost incredible allegations were true." (Id. ¶ 144.) Plaintiff's response continues with an almost-unintelligible seven-page exposition alleging that the U.S. Attorney's Office's "command and control" officers instructed that the U.S. Attorney's Office avoid use of a state secrets defense rather than risk exposure of state secrets.

As I noted in my last M&O, Robert's *pro se* status does not exempt him from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). Robert is a suspended attorney who has a long history of litigation before this court. See In the Matter of Charles Robert, 779 N.Y. Supp. 2d 236 (2d Dep't 2004). As I wrote: "I . . . hold Robert to a higher standard than I would a *pro se* layperson inexperienced with the Federal Rules or the rules of the court." (6/18/07 M&O at 3.) I have warned him on multiple occasions to

make simple and concise averments in his moving papers. I have also warned him repeatedly to refrain from making immaterial and argumentative allegations. Finally, I have admonished Plaintiff on numerous occasions about violating my individual rules regarding page length. Robert's fifty-two page affidavit clearly violates my individual rule that "[u]nless prior permission has been granted, memoranda of law in support of . . . motions are limited to 25 pages . . . ." Individual Rules of Judge Nicholas G. Garaufis, Part III(C). This rule has been cited in numerous recent Orders of this court. There is simply no excuse for Robert's contravention of these directives – his application fails to comport with the Federal Rules, the rules of the Eastern District of New York, and my individual rules, all of which he has been repeatedly instructed to follow. In addition to the fact that Plaintiff's response itself violates these procedural rules, Robert fails to do what I asked of him: to show good cause why his three previous submissions should not result in sanctions.

**C.      Conclusion**

For the aforementioned reasons, I reject Plaintiff's response and impose sanctions in the amount of $1,000. Plaintiff is directed to make payment to the Clerk of Court by money order or cash within ten (10) days of this Memorandum and Order. The Clerk of Court is directed to return **without filing** any and all documents plaintiff may submit (except for a notice of appeal) unless and until he complies with this Order.

SO ORDERED.

Dated: July 10, 2007  /s/  Nicholas G. Garaufis
      Brooklyn, N.Y.  NICHOLAS G. GARAUFIS
                      United States District Judge